UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 1:22-cr-00164-ADA-BAM |
|---|---|
| Plaintiff, | |
| v. | ORDER FOR RESTITUTION |
| MICHAEL MARCUM, | (ECF No. 38) |
| Defendant. | |

On March 20, 2023, this matter came before the Court for a hearing to determine the amount of restitution to be paid by Defendant, Michael Marcum ("Defendant"). Having heard the arguments of the parties and considered the papers filed, the Court hereby denies the United States' request to impose an order of restitution against Defendant.

**I.**

**Background**

On October 11, 2022, the Defendant pleaded guilty to 18 U.S.C. § 922(g)(1), felon in possession of ammunition, and 18 U.S.C. § 1704, possession of counterfeit postal key. (*See* ECF No. 26.) Pursuant to his plea agreement, Defendant agreed to pay restitution in the amount to be determined by the Court with respect to his role in the use of counterfeit postal key to steal mail. (ECF No. 25 at 2-3.) On December 20, 2022, the Court sentenced Defendant to forty-one months incarceration with thirty-six months of supervised release to follow and ordered Defendant to pay

restitution in an amount to be determined by the Court after a hearing on the matter. (ECF No. 33.) On February 28, 2023, the United States filed a memorandum for restitution in which the United States requests restitution in the amount of $106,270, consisting of $94,770 to be paid to the United States Postal Service (USPS), and $11,500 to be paid to the individual victims associated with the stolen credit/debit cards found in Defendant's possession. (*See* ECF No. 38.) Defendant filed his opposition on March 15, 2023, objecting to any restitution alleging that the United States failed to provide evidence or documentation establishing that any actual loss was directly and proximately caused by Defendant's actions. (*See* ECF No. 41.) A hearing on the matter was conducted on March 20, 2023, after which the Court took the matter under submission. (*See* ECF No. 42.)

## II.

## Legal Standard

The Mandatory Victims Restitution Act (MVRA) requires mandatory restitution to any person "directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." *See* 18 U.S.C. §§ 3663A; 3663A(a)(2). The government bears the burden of proving that a person or entity is a victim for purposes of restitution, and of proving "the amount of the loss sustained by a victim as a result of the offense." 18 U.S.C. § 3664(e). Due to "the remedial purposes underlying the MVRA, … district courts [have] a degree of flexibility in accounting for a victim's complete losses." *United States v. Waknine*, 543 F.3d 546, 557 (9th Cir. 2008) (citations omitted). When there is a dispute as to the proper amount of restitution, the MVRA "minimally requires that facts be established by a preponderance of the evidence, and the district court [may] utilize only evidence that possesses sufficient indicia of reliability to support its probable accuracy." *Id*. (citations and internal quotations omitted). Also, the district court must set forth an explanation of its reasoning and specific findings of fact when ordering the final restitution amount. *Id*. at 556.

## III.

## Discussion

**A. The United States Provided Insufficient Evidence to Support $94,770 in Restitution.**

The United States has the burden of establishing by a preponderance of the evidence that

the victim's damages were caused by the conduct of which the defendant was convicted. *United States v. Rice*, 38 F.3d 1536, 1540 (9th Cir. 1994). Despite the flexibility district courts have in accounting for victim's complete losses, "the government must provide the district court with more than just . . . general invoices . . . ostensibly identifying the amount of their losses." *Waknine*, 543 F.3d at 557 (citations omitted).

Here, the United States is requesting the Court to order Defendant to pay $94,770 to the USPS for replacing and/or repairing seventy-eight mailboxes that were compromised due to Defendant's acts. (ECF No. 38 at 2-3.) A supervisor in the Field Maintenance Operations Department for the USPS, explains that this amount consists of the cost associated with replacing and/or repairing the compromised seventy-eight community mailboxes; a cost of approximately $1,215 per unit. (ECF No. 38-1.) This amount includes $915 per box unit, plus $300 for the labor, assembly, labeling, and installation of new a unit after removal of an existing unit. (*Id*.) The United States proffers that based on the stolen mail that was found in Defendant's possession, it was determined that seventy-eight community mailboxes were compromised in Bakersfield, California by Defendant's acts. (*See* ECF No. 38 at 2.) Defendant counters by arguing that the United States fails to explain how Defendant's conduct created the need for the mailbox units to be replaced and not simply repaired. (ECF No. 41 at 3.)

The Court is persuaded by Defendant's arguments. In an exhibit attached to the United States' Motion for Restitution, a United States Postal Inspector ("Inspector"), explained that if a mailbox gets vandalized, the United States Postal Service ("USPS") must replace it with a new unit and lock. (ECF No. 38-2 at 1.) However, when a lock is compromised, meaning thieves have a key or other means to access community mailboxes to steal mail without having to vandalize it, USPS must only change the locks. (*Id*.) The Inspector also states that "[i]t is unknown at this time which of those [seventy-eight community mailboxes] were actually vandalized or not." (*Id*.) Thus, the United States offered insufficient evidence to prove that the need to replace those seventy-eight mailboxes was a direct result of Defendant's acts because it is unclear which mailboxes were vandalized and needed to be completely replaced or which only required the locks to be replaced. *Rice*, 38 F.3d at 1540; *see also Waknine*, 543 F.3d at 558 (noting that "it is the responsibility of the

government, aided by the victims, to provide adequate reliable evidence"). As a result, the Court will not award $94,770 in restitution.

### B. Restitution Related to Credit/Debit Cards found in Defendant's Possession.

United States Postal Inspection Service Inspectors found at least twenty-three credit/debit cards in Defendant's possession when they searched Defendant's residence during the investigation. (*See* ECF No. 38 at 3.) The United States admits that no additional evidence has been obtained regarding unauthorized charges made with these cards, but it requests that the Court order Defendant to pay $11,500 to individual victims whose credit/debit cards were found in Defendant's possession—$500 per victim. (*Id*.) Even though no evidence has been found regarding unlawful use of these cards causing actual loss to victims, the United States suggests that the Court rely on Application Note 3(F)(i) to United States Sentencing Guideline section 2B1.1 in determining the appropriate loss amount associated with the stolen credit/debit cards. (*Id*.) The United States admits that this application note is not binding on the Court when considering loss amount but posits that the Court should consider the specific facts of this case and determine whether the application of the $500-per-card multiplier is appropriate when fashioning the final restitution amount. (*Id*.)

The Defendant objects to the United States' request because the United States admits that there is no evidence that Defendant successfully used the cards. (ECF No. 41 at 5.) Thus, no evidence exists of actual loss, nor any identifiable victims exist, which are both required for restitution to be ordered under the MVRA. (*Id*.)

The Court is not persuaded by the United States suggestion. The Ninth Circuit has held that "the conduct underlying the offense of conviction must have caused a loss for which a court may order restitution." *United States v. Gamma Tech Indus.*, *Inc.*, 265 F.3d 917, 928 (9th Cir.2001). Additionally, the amount of restitution is justified "[s]o long as the district court orders defendants to pay restitution only after someone proves the amount by a preponderance of the evidence." *Id*. at 917. Here, the United States admits that there is no evidence that indicates that Defendant unlawfully used those twenty-three credit/debit cards. (ECF No. 38 at 3.) As a result, the United States has not met its burden to show the amount of loss suffered by the individual victims by a

preponderance of the evidence. *Gamma Tech Indus., Inc.*, 265 F.3d at 928.

Regarding the United States' suggestion for this Court to order restitution based on U.S.S.G. § 2B1.1, application note 3(F)(i), the Court is not persuaded. Under section 2B1.1, actual loss and intended loss are both used when calculating the "loss" amount for purposes of the sentencing guidelines offense level. As Defendant correctly points out, neither U.S.S.G. § 2B1.1 nor application note 3(F)(i) have any relevance to restitution. (ECF No. 41 at 6.) Further, the Ninth Circuit held that even regarding offense level calculations, the loss amount set forth under application note 3(F)(i) is not binding on the Court. *United States v. Kirilyuk*, 29 F.4th 1128, 1136-39 (9th Cir. 2022). Accordingly, the Court will not adopt the United States' suggestion to order restitution based on U.S.S.G. § 2B1.1, application note 3(F)(i).

Since the United States concedes there is no evidence that Defendant successfully used these cards, the Court will order no restitution for these items.

### IV.
### Conclusion

For the reasons stated above, the Court denies the United States' request to impose an order of restitution against Defendant.

IT IS SO ORDERED.

Dated:   September 7, 2023

_____
UNITED STATES DISTRICT JUDGE

5