1  HEATHER E. WILLIAMS, Bar #122664
   Federal Defender
2  ERIC V. KERSTEN (SBN 312138)
   Assistant Federal Defender
3  2300 Tulare Street, Suite 330
   Fresno, California 93721
4  Telephone: (559) 487-5561
   Facsimile: (559) 487-5950
5
6  Attorneys for Defendant
   MICHAEL MARCUM
7
8           IN THE UNITED STATES DISTRICT COURT
9           FOR THE EASTERN DISTRICT OF CALIFORNIA
10
11  UNITED STATES OF AMERICA          Case No. 1:22-cr-00164 NODJ
12          Plaintiff,                NOTICE OF MOTION AND MOTION FOR
                                      REDUCTION OF PREVIOUSLY IMPOSED
13      v.                            SENTENCE PURSUANT TO 18 U.S.C. §
                                      3582(C)(1)(A)(i); EXHIBITS
14  MICHAEL MARCUM,
15          Defendant.                Judge: TBD
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

PAGE

INTRODUCTION ...........................................................................................................1

FACTUAL BACKGROUND .......................................................................................1

ARGUMENT ...............................................................................................................3

    A.    Mr. Marcum Has Exhausted His Administrative Remedies ..............................3

    B.    U.S.S.G. § 1B1.13(b) Defines "Extraordinary and Compelling Reasons" for a Sentencing Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A) ................................................................................4

    C.    The Mr. Marcum's Serious Physical and Medical Conditions Constitute "Extraordinary and Compelling" Reasons Under U.S.S.G. § 1B1.13(b)(1)(B) and (C) ....................................................4

    D.    Mr. Marcum Suffers Serious Physical and Medical Conditions from Which He Is Not Expected to Recover, and that Substantially Diminish His Ability to Provide Self-Care Within FCI Sheridan ...................................................................5

    E.    The Medical Facilities at FCI Sheridan Are Not Adequate to Treat Michael Marcum's Life Threatening Physical and Medical Conditions .......................................................................8

        1.  Mr. Marcum's Repeated Hospitalizations Establish that the Medical Facilities at FCI Sheridan Are Not Adequate to Treat His Life Threatening Physical and Medical Conditions ..............................................................13

        2.  The BOP's Lack of Response to Compassionate Release Requests Does Not Indicate Mr. Marcum's Sentencing Reduction Request Lacks Merit ..............................13

    F.    Mr. Marcum Faces Physical and Medical Conditions that Substantially Diminish his Ability to Self-Care Within the Environment of a Prison .......................................................14

    G.    The Twenty-Plus Months Mr. Marcum has Served is Sufficient, but not Greater than Necessary, to Provide Just Punishment Under § 3553(a) ...................................................................15

    H. Release Plan .................................................................................18

CONCLUSION ....................................................................................18

i

**INTRODUCTION**

Michael Marcum respectfully moves this Court to grant his motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and compelling reasons" presented by his poor health. He has spent more than twenty months in federal custody, first in pretrial detention at the Fresno County Jail, and since April 2023 by the Federal Bureau of Prisons (BOP) at FCI Sheridan. Marcum has been hospitalized multiple times while at FCI Sheridan because it is not equipped to adequately care for his health issues. His projected release date is May 10, 2025. If forced to remain in custody for the remaining fifteen months of his 41-month term Mr. Marcum is at serious risk of further physical deterioration or death from his physical and medical conditions.

**FACTUAL BACKGROUND**

Michael Marcum pled guilty to one count of being a felon in possession of ammunition under 18 U.S.C. § 922(g)(1), and one count of possession of a counterfeit postal key under 18 U.S.C. § 1704.[1] Pursuant to the plea agreement, the parties jointly agreed on the applicable guideline calculations and jointly recommended a 41-month term of imprisonment, at the low end of the range.[2] The parties agreed on a stipulated loss amount of $95,001- $150,000.[3] This amount rested on intended loss attributable to stolen mail. After briefing and a restitution hearing no actual loss was found and no restitution ordered.[4]

Mr. Marcum is 47 years old and suffers from congestive heart failure (CHF), severe pulmonary hypertension, cirrhosis of the liver, hepatitis C, obesity, hyperlipidemia, splenic lesion, gastro-esophageal reflux disease, and gout.[5] Cardiologist Eugene Spear, MD, has twice examined Mr. Marcum. On both occasions he recommended that BOP consider compassionate

---

[1] PSR at ¶¶ 1-2.
[2] *See* Plea Agreement, Doc. 25 at p. 9-10.
[3] *Id*.
[4] *See* Order Denying Restitution, Doc. 46.
[5] Because the exhibits in this motion consist overwhelmingly of medical records permission is being requested to file all exhibits under seal:
    *See* Exhibit 1, BOP Health Services medical record generated January 28, 2024;
    *See* Exhibit 2, Eugene Spear, MD (Cardiology), Adventist Health Heart and Vascular, Progress Notes from September 27, 2023 office visit; and
    *See* Exhibit 3, Eugene Spear, MD (Cardiology), Adventist Health Heart and Vascular, Progress Notes from November 15, 2023 office visit.

release for Mr. Marcum based on his "overall poor health,"[6] and the difficulty of treating Mr. Marcum's health issues.[7] He also recommended a follow up appointment for Mr. Marcum around January 15, 2024.[8] As of February 23, 2024 that appointment has not occurred.

Mr. Marcum was arrested on June 10, 2022 and transported to the Fresno County Jail. The facility would not accept him without medical stabilization and Marcum was admitted to the Community Regional Medical Center (CRMC) where he was evaluated, treated and stabilized before being discharged to the Fresno County Jail on June 13, 2022.[9] Prior to admission Marcum had been suffering from chest pain and shortness of breath, leg swelling and "bilateral lower extremity venous stasis wounds," which are wounds on the leg or ankle caused by abnormal or damaged veins.[10] The "clinical impression" indicated Marcum suffered from "elevated troponin" and "chronic congestive heart failure (CHF), unspecified heart failure type."[11] Chest imaging also revealed that Marcum suffers from "severe pulmonary hypertension with RVSP of 70-75 mm Hg."[12] The discharge summary generically states Marcum was "counseled to quit using methamphetamine" and "educated … about the necessity of lifestyle modification/weight loss/diabetic diet/regular exercise."[13] In fact, the doctor's advice to Mr. Marcum was explicit. Marcum was advised unequivocally that he suffers from serious heart problems and will soon be dead if he does not stop using methamphetamine.

This was a real wake-up call for Mr. Marcum. It forced him to confront his own mortality. It also opened his eyes to the negative consequences his lifestyle was having on his relationship with his two adult daughters, both of whom have advised Mr. Marcum he needs to change or they will no longer have anything to do with him. He also realizes his addiction and related criminal history have prevented him from leading a productive life. Mr. Marcum has hit rock bottom. He knows he needs to get his life in order and is ready to do so. Mr. Marcum has not used any illegal controlled substances since his arrest on June 10, 2022. He does not qualify

---

[6] Ex. 3 at 3,
[7] Ex. 2 at 3.
[8] Ex. 3 at 3.
[9] See Exhibit 4, Community Regional Medical Center (CRMC) for Michael Marcum, dated June 13, 2022.
[10] Ex. 4 at 6-7.
[11] Id. at 8.
[12] Id. at 14.
[13] Id. at 14-15.

for the BOP 500-hour residential drug abuse program (RDAP) but is currently participating in the BOP non-residential treatment program.[14] He intends to pursue further treatment upon his release from custody.

Mr. Marcum does not pose a danger to society given his significant health issues and his realization that his lifestyle must change or he will soon be dead. Accordingly, Mr. Marcum asks this Court for a sentencing reduction under 18 U.S.C. § 3582(c)(1)(A) to time served so that he may receive timely and appropriate medical treatment outside of custody.

**ARGUMENT**

**I.     Under the First Step Act District Courts Have Wide Discretion to Grant a Sentencing Reduction.**

A sentence reduction under 18 U.S.C. § 3582(c)(1)(A) should be granted because Mr. Marcum has (1) exhausted his administrative remedies or thirty days have passed since he requested compassionate release, (2) shown that "extraordinary and compelling reasons" support a reduction, and (3) shown that "the factors set forth in section 3553(a) to the extent that they are applicable" also favor release. 18 U.S.C. § 3582(c)(1)(A)(i).

**A.  Mr. Marcum has Exhausted His Administrative Remedies.**

A defendant may submit a motion under § 3582(c)(1)(A) whenever "[i] the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or upon "[ii] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." In other words, the movant may either fully exhaust [his] administrative rights to appeal "or wait 30 days after [his] first request to the prison." *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020). A defendant seeking a reduction satisfies § 3582(c)(1)(A)'s claim processing rule if 30 days have lapsed "from the receipt of such a request by the warden of the defendant's facility." *See United States v. Keller*, 2 F.4th 1278, 1281–83 (9th Cir. 2021) (quoting First Step Act of 2018, § 603(b), Pub. L. 115–391, 132 Stat. 5194, 5239 (Dec. 21, 2018)).

---

[14] *See* Exhibit 5, Marcum's BOP C File was archived October 27, 2023. It states Marcum was on the waiting list for the non-residential treatment program but he is now enrolled in the program.

Here, Mr. Marcum submitted compassionate release requests to the prison warden on May 11, 2023,[15] and again on July 1, 2023,[16] setting forth his serious medical conditions including CHF (chronic heart failure) and cirrhosis of the liver. More than 30 days have elapsed since the warden received these requests and he has not responded to either. Mr. Marcum has thus met the exhaustion requirement and this Court may consider his motion.

### B.  U.S.S.G. § 1B1.13(b) Defines "Extraordinary and Compelling Reasons" for a Sentencing Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A).

Section 3582(c)(1)(A) governs motions for sentencing reductions, commonly referred to as motions for "compassionate release." *See United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). On a defendant's motion, the court may reduce a sentence if it finds that "extraordinary and compelling reasons warrant such a reduction," such a "reduction is consistent with applicable policy statements issued by the Sentencing Commission," and supported by the § 3553(a) factors. *Id.* The policy statement relating to sentencing reductions, U.S.S.G. § 1B1.13, previously referred only to BOP-initiated motions. It was not an "applicable policy statement" for sentencing reduction motions filed by defendants. *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). Thus, while the "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 [could] inform a district court's discretion," they were not binding." *Id.* However, pursuant to Guideline Amendment 814, effective November 1, 2023, section 1B1.13(b) now applies to motions to reduce a term of imprisonment filed by "the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A)." U.S.S.G. § 1B1.13(a) (emphasis added).

### C.  Mr. Marcum's Serious Physical and Medical Conditions Constitute "Extraordinary and Compelling" Reasons Under U.S.S.G. § 1B1.13(b)(1)(B) and (C)

Michael Marcum's medical circumstances satisfy the Sentencing Commission's definition of "extraordinary and compelling" reasons. Section 3582(c)(1)(A)(i) directs courts to consider "applicable" Sentencing Commission policy statements when granting compassionate

---

[15] May 11, 2023 Compassionate Release request to Warden Jacquez attached as exhibit 6.
[16] July 1, 2023 Inmate Compassionate Release request to Warden Jacquez attached as exhibit 7.

release. 18 U.S.C. § 3582(c)(1)(A)(i). Under the newly adopted U.S.S.G. § 1B1.13(b)(1)(B), extraordinary and compelling reasons exist based on the "Medical Circumstances of the Defendant" if the defendant is "suffering from a serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B)(i).  Extraordinary and compelling reasons also exist if: "The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). Further, "Extraordinary and compelling reasons exist under any of the [circumstances set forth in § 1B1.13(b)] or a combination thereof." U.S.S.G. § 1B1.13(b).

Michael Marcum suffers from debilitating congestive heart failure (CHF) along with severe pulmonary hypertension and numerous related cardiac conditions. His medical condition is further compromised by hepatitis C, cirrhosis of the liver and obesity.[17] CHF alone, and in combination with his other conditions are ailments from which he is not expected to recover and substantially diminish his ability to provide self-care while confined at FCI Sheridan. Further, these conditions require long-term specialized medical care that is not available at FCI Sheridan, and without which Mr. Marcum is at risk of serious deterioration in health or death.

### D. Mr. Marcum Suffers Serious Physical and Medical Conditions from Which He Is Not Expected to Recover, and that Substantially Diminish His Ability to Provide Self-Care Within FCI Sheridan and

Michael Marcum suffers from congestive heart failure, a complex clinical syndrome characterized by inefficient myocardial performance, resulting in compromised blood supply to the body. CHF is defined by the American College of Cardiology (ACC) and the American Heart Association (AHA) as "a complex clinical syndrome that results from any structural or functional impairment of ventricular filling or ejection of blood." CHF is a common disorder worldwide with a high morbidity and mortality rate. CHF is a

---

[17] *See* Ex. 1-3.

1     progressive disease, the treatment of which requires a multifaceted approach involving

2     patient education, optimal medication administration, and decreasing acute

3     exacerbations.[18]  The mortality rate following hospitalization for CHF is estimated at

4     around 10% at 30 days, 22% at 1 year, and 42% at 5 years. This can increase to greater

5     than 50% for patients with advanced CHF.[19] Risk factor reduction and aggressive

6     management of comorbid conditions are crucial to reducing morbidity and mortality

7     associated with CHF. In addition to compliance with medications, patients need guidance

8     on self-monitoring of symptoms of HF and avoiding the triggers of CHF. Close

9     supervision, including surveillance by the patient and family, home-based visits,

10     telephone support, and remote monitoring, is recommended. Patients require close

11     clinical follow-up for assessing volume status, effects of drug therapy, and escalation of

12     care as indicated.[20]

13         Progress notes from cardiologist Eugene M. Spear, MD, dated September 27, 2023,

14 identify Marcum as a "new patient from FCI Sheridan with past medical history of diastolic

15 dysfunction, pulmonary hypertension,[21] syncope,[22] and chest pain who [was there to] to establish

16 cardiac care.[23] During the appointment Marcum reported continued chest pain that comes and

17 goes, shortness of beath while walking, wheezing at night, lightheadedness and dizziness.[24] And

18

19

---

[18] NIH National Library of Medicine, "Congestive Heart Failure," Ahmad Malik; Daniel Brito; Sarosh Vaqar; Lovely Chhabra., Last Update: November 5, 2023, available at https://www.ncbi.nlm.nih.gov/books/NBK430873/.

[19] Id.

[20] Id.

[21] Pulmonary hypertension. RVSP is short for "right ventricular systolic pressure." RVSP is used to estimate the pressure inside the artery that supplies the lung with blood. Elevated pressures in the pulmonary artery is known as pulmonary artery hypertension (PAH). By current clinical guidelines A normal RVSP is <40 mm Hg, mildly elevated RVSP is in the 40-49.9 mmHg range, moderately elevated RVSP is in the 50.-59.9 mmHg ranges, and severely elevated RVSP is ≥60 mmHg. During long-term Australian follow-up study patients with eRVSP levels indicative of mild, moderate, and severe PH were more likely to die than those without pulmonary hypertension. Adjusting for age and sex, patients with severely elevated eRVSP were almost 10-fold more likely to die within 5 years. "Lower RVSP Threshold Linked to Mortality Risk in Pulmonary Hypertension, Cardiology Advisor, June 7, 2019, available at https://www.thecardiologyadvisor.com/home/topics/pulmonary-vasculature/lower-rvsp-threshold-linked-to-mortality-risk-in-pulmonary-hypertension/.

[22] Syncope is the medical condition often referred to fainting "passing out." It most often occurs when blood pressure is too low and the heart doesn't pump enough oxygen to the brain. It can be harmless or a symptom of an underlying medical condition. Cardiac syncope is caused by various heart conditions. It can indicate an increased risk of sudden cardiac death. American Heart Association, available at https://www.heart.org/en/health-topics/arrhythmia/symptoms-diagnosis--monitoring-of-arrhythmia/syncope-fainting.

[23] Ex. 2 at 1.

[24] Id.

Marcum was previously seen in the ED (emergency department) on September 18, 2023 with chest pain likely due to pulmonary hypertension.[25]

Dr. Spear's notes also reference a chest x-ray on July 16, 2023, and an echocardiogram (echo) on July 17, 2023 that showed signs of pulmonary hypertension.[26] These tests were performed at the Salem Hospital where Marcum was hospitalized from July 16 through July 22, 2022 after experiencing symptoms of a possible heart attack. The "echo showed the left ventricular size and systolic function is hyperdynamic.[27] LVEF 75%. Septal wall motion is concerning for RV (right ventricle) pressure overload. The right ventricle is severely dilated with severe reduction in systolic function. TAPSE 1.3 cm,[28] Severe RA Dilation. At least moderate tricuspid regurgitation[29] with severe elevation in RVSP 101mmHg. The IVC is dilated with <50% respiratory collapse suggestive of elevated right atrial pressure (RAP is > 15mmHg.)"[30]

---

[25] *Id.*

[26] *Id.* at 2.

[27] A hyperdynamic heart is defined as a left ventricular (LV) with an ejection fraction (EF) above the normal range. This is not favorable. A study looked at the diastolic properties of subjects with a hyperdynamic heart and its impact on outcome. Consecutive echocardiography examinations during 5 years were evaluated by EF subgroups, including a hyperdynamic heart (EF >70%). Subjects with a hyperdynamic systolic function had an increased prevalence of diastolic dysfunction and reduced survival. A hyperdynamic heart is not a normally functioning heart. Am J Cardiol,. 2023 Jan 15:187:119-126. "Echocardiographic Characteristics and Clinical Outcomes of the Hyperdynamic Heart: A 'Super-Normal' Heart is not a Normal Heart," Israel Gotsman, et al., available at https://pubmed.ncbi.nlm.nih.gov/36459734/

[28] Right ventricular (RV) function is an important determinant of prognosis in pulmonary hypertension. Tricuspid annular displacement (tricuspid annular plane systolic excursion (TAPSE) is an echo-derived measure of RV function with prognostic significance in pulmonary hypertension. In one study of 63 patients with pulmonary hypertension a TAPSE of less than 1.8 cm was associated with greater RV systolic dysfunction. Survival estimates at 1 and 2 years were 94 and 88% for those with a TAPSE of 1.8 cm or greater versus 60 and 50% in subjects with a TAPSE less than 1.8 cm. Am J Respir Crit Care Med, 2006 Nov 1, Paul R. Forfia et al, "Tricuspid annular displacement predicts survival in pulmonary hypertension," available at https://pubmed.ncbi.nlm.nih.gov/16888289/

[29] Tricuspid regurgitation is a type of heart valve disease that occurs when the valve's flaps do not close properly. The tricuspid valve controls the flow of blood from your heart's right atrium (top chamber) to the right ventricle (bottom chamber). Blood can leak backward into the atrium from the leaky tricuspid valve, causing the heart to pump harder to move blood through the valve. The most common cause of tricuspid regurgitation is enlargement of the right ventricle. Pressure from heart conditions, such as heart failure, pulmonary hypertension and cardiomyopathy, cause the ventricle to expand. The result is a misshapen tricuspid valve that is leaky and cannot close properly. Penn Medicine, available at https://www.pennmedicine.org/for-patients-and-visitors/patient-information/conditions-treated-a-to-z/tricuspid-regurgitation

[30] Elevated mean right atrial pressure (RAP) is an independent risk factor for mortality. This study showed elevation of eRAP is associated with decreased survival time compared with lower eRAP. Multivariate analysis revealed that eRAP > 15 mm Hg was predictive of mortality. Elevation of eRAP by echocardiography at baseline assessment was strongly associated with increased risk of death or transplant in patients with PAH. "Echocardiographic Assessment of Estimated Right Atrial Pressure and Size Predicts Mortality in Pulmonary Arterial Hypertension," Christopher Austin, MD, et al., Chest, January 2015, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4285078/.

Dr. Spear's September 27, 2023 treatment plan describes Marcum's case as "tough to treat," and states a medical formulary at FCI Sheridan is not ideal for treatment of Marcum's condition. The plan provides:

> [BOP] need[s] to contemplate the best place for [Mr. Marcum], either compassionate release or send him to a facility that has [an] in house medical facility. We do not have great meds to treat [Marcum's] pulmonary hypertension on the formulary. … These are tough cases to treat.[31]

During a follow up appointment on November 15, 2023, Dr. Spear reiterates that Mr. Marcum suffers diastolic heart failure[32] and pulmonary hypertension, as well as hepatitis C and liver failure. He reports that despite the previously identified a need to "contemplate on the best decision whether that be compassionate release or transferring [Marcum] to a facility with in house medical care. [Marcum] has not been released yet obviously."[33] Regarding the plan for future treatment, Dr. Spear reiterates the need to "consider compassionate release for [Mr. Marcum] as he is in overall poor condition."[34] He also identifies a "need to reevaluate [Marcum's] pulmonary hypertension" and recommends a follow up appointment in about two months, around January 15, 2024.[35] As of February 23, 2024 the follow up appointment had not occurred.

### E.  The Medical Facilities at FCI Sheridan Are Not Adequate to Treat Michael Marcum's Life Threatening Physical and Medical Conditions

Shortly after arriving at FCI Sheridan Marcum was medically evaluated by Health Services on April 12, 2023. Marcum advised Health Services of his congestive heart failure

---

[31] Ex. 2 at 3.
[32] Diastolic heart failure, also known as heart failure with preserved ejection fraction (HFpEF), is a condition in which your heart's main pumping chamber (left ventricle) becomes stiff and unable to fill properly. The left ventricle is the thickest chamber in the heart and pumps blood to the rest of your body. When the left side of the heart stiffens your heart cannot relax properly between beats, does not fill up with as much blood as it should, and pumps less blood to the rest of the body than a healthy heart would. This results in symptoms of heart failure that may include shortness of breath, fatigue, difficulty breathing when trying to lay flat and edema. There is no cure for diastolic heart failure but proper treatment can help you manage symptoms and improve your heart's function. clevelandclinic.org, May 8, 2022, available at https://my.clevelandclinic.org › health › diseases › 2295
[33] Ex. 3 at 1.
[34] Ex. 3 at 3.
[35] *Id*.

(CHF) and pulmonary hypertension history, and his related hospitalization in June 2022.[36] Health Services noted a follow up cardiology consultation would be scheduled.[37]

On May 30, 2023 Marcum reported to Health Services complaining of dizziness that started about an hour earlier and worsened when he stood.[38] Marcum was not then experiencing chest pain or shortness of breath but dizziness can be a symptom of CHF.

On June 10, 2023 Marcum was reported to Health Services and was transported to the Wilamette Valley Medical Center emergency room for severe abdominal pain. A CT scan revealed a mass in Marcum's spleen. It was considered unlikely that the mass was cancerous but an MRI was recommended for further evaluation of the lesion.[39] This issue was not related to Marcum's cardiac issues but is evidence of his overall poor health.

On July 16, 2023 Marcum was experiencing chest pain and felt very cold all day. He took a shower to try to warm up and passed out. A medical emergency was called and staff noted upon arrival that "Marcum was laying on his back, and appeared to be in acute distress. He had labored breathing, was clutching his chest, was profusely diaphoretic,[40] [had] difficulty speaking in full sentences, and [his] eyes were diffusive, red and watery."[41] Marcum was unable to bear any weight and staff members had to assist him to Health Services via gurney.  There, he asked "to sit up in order to breathe easier," and reported "'searing' right chest pain, dizziness, intense increased body temperature, and a feeling of doom."[42] He was transported to the emergency room and admitted to Salem Hospital for seven days. He was discharged to FCI Sheridan on July 22, 2023.[43]

On August 28, 2023 Marcum reported to Health Services with shortness of breath and chest pain.[44] An EKG was performed, Marcum was placed on oxygen, crackles were heard at the

---

[36] *See* Exhibit 8, Michael Marcum BOP Health Services medical records, April 4, 2023 Encounter Date.
[37] *Id*.
[38] *See* Exhibit 9, Michael Marcum BOP Health Services medical records, May 30, 2023 Encounter Date.
[39] *See* Exhibit 10, Michael Marcum BOP Health Services medical records, June 11, 2023 Encounter Date.
[40] Diaphoresis is the medical definition of excessive sweating due to an underlying health condition or a medication. It can be a symptom of myocardial infarction or heart attack. *See* "Diaphoresis: Causes and Treatment," Cleveland Clinic, available at https://my.clevelandclinic.org.
[41] Ex. 10.
[42] *See* Exhibit 11, Michael Marcum BOP Health Services medical records, July 16, 2023 Encounter Date.
[43] *Id*.
[44] *See* Exhibit 12, Michael Marcum BOP Health Services medical records, August 28, 2023 Encounter Date.

base of his lungs, and a 14-pound weight gain during the prior week was noted.[45] Marcum was then transported to the Wilamette Valley Medical Center emergency room for further evaluation.[46]

On September 3, 2023, Marcum reported to Health Services for chest pain and shortness of breath.[47] After an EKG and consultation with the on call doctor Marcum was again transported to the Salem Hospital emergency room and admitted for treatment.[48]

During a September 8, 2023 a chronic care encounter at Health Services it was noted that Marcum suffers from congestive heart failure and pulmonary hypertension, and was recently hospitalized for treatment. Marcum "had an echo (echocardiogram) at the time that showed severely dilated R (right) heart chambers and small left heart. He had diuresis and . . . continued SOB (shortness of breath) with exertion."[49] Mr. Marcum was discharged from the Salem Hospital to FCI Sheridan on September 6, 2023.[50]

On September 13, 2023 Marcum was again evaluated at Health Services for shortness of breath.[51]

On September 18, 2023 Marcum was seen at Health Services for chest pain and shortness of breath for the prior two-to-three days. Due to changes in Marcum's EKG and chest pain, Marcum was transported to the Salem Hospital emergency room for evaluation.[52]

During a follow up on September 21, 2023 Marcum advised Health Services he had been experiencing lightheadedness that came on with exertion such as going upstairs or walking longer distances. No chest pain or shortness of breath the usual he experiences due to his pulmonary hypertension was noted.[53]

On September 25, 2023 Marcum was evaluated at Health Services for chest pain.[54]

---

[45] *Id*.
[46] *Id*.
[47] *See* Exhibit 13, Michael Marcum BOP Health Services medical records, September 3-6, 2023 Encounter Dates.
[48] *Id*.
[49] *See* Exhibit 14, Michael Marcum BOP Health Services medical records, September 8, 2023 Encounter Date.
[50] *See* Exhibit 15, Michael Marcum BOP Health Services medical records, September 6, 2023 Encounter Date.
[51] *See* Exhibit 16, Michael Marcum BOP Health Services medical records, September 13, 2023 Encounter Date.
[52] *See* Exhibit 17, Michael Marcum BOP Health Services medical records, September 18, 2023 Encounter Date.
[53] *See* Exhibit 18, Michael Marcum BOP Health Services medical records, September 21, 2023 Encounter Date.
[54] *See* Exhibit 19, Michael Marcum BOP Health Services medical records, September 25, 2023 Encounter Date.

On September 29, 2023 Marcum was seen at Health Services for increasing shortness of breath and lightheaded.[55]

On October 5, 2023 Marcum was evaluated at Health Services for dizziness and chest pain that worsened with exertion.[56]

On October 12, 2023 Marcum was seen at Health Services for chest pain and shortness of breath, with intermittent dizziness over the past several weeks.[57]

On November 7, 2023 Marcum reported to Health Services while experiencing substantial chest pain that radiated to his left chest and worsened upon exertion. It was accompanied by shortness of breath.[58]

On November 24, 2023 Marcum was evaluated at Health Services after staff observed him sitting on a walkway for unknown reasons. Marcum sat down on the walk after feeling dizzy and experiencing shortness of breath when returning to his unit. He reported experiencing similar episodes frequently due to his pulmonary hypertension and heart failure.[59]

On November 27, 2023 Marcum was again evaluated at Health Services after experiencing chest pain that started about an hour earlier. He was also experiencing chest tightness that radiated to his left shoulder. He was transported to the Wilamette Valley Medical Center emergency room and evaluated for "radiating chest pain with abnormal EKG."[60]

On December 5, 2023 Marcum was experiencing breathing problems. He advised Health Services he had been taking a new medication the past two weeks that was making it harder for him to breathe, not helping.  Marcum could barely walk anywhere without getting so short of breath he had to stop.[61] When walking on the compound he felt shortness of breath and subsequent chest pain so he reported to Health Services for an evaluation.[62] A cardiology consultation was requested.[63]

---

[55] *See* Exhibit 20, Michael Marcum BOP Health Services medical records, September 29, 2023 Encounter Date.
[56] *See* Exhibit 21, Michael Marcum BOP Health Services medical records, October 5, 2023 Encounter Date.
[57] *See* Exhibit 22, Michael Marcum BOP Health Services medical records, October 12, 2023 Encounter Date.
[58] *See* Exhibit 23, Michael Marcum BOP Health Services medical records, November 7, 2023 Encounter Date.
[59] *See* Exhibit 24, Michael Marcum BOP Health Services medical records, November 24, 2023 Encounter Date.
[60] *See* Exhibit 25, Michael Marcum BOP Health Services medical records, November 27, 2023 Encounter Date.
[61] *See* Exhibit 26, Michael Marcum BOP Health Services medical records, December 5, 2023 Encounter Date.
[62] *Id.*
[63] *See* Exhibit 27, Michael Marcum BOP Health Services medical records, December 4, 2023 Note Date.

On December 8, 2023, during a Health Services comprehensive clinic encounter, Marcum reported increased shortness of breath, epigastric pain, and water retention with the medication Ambrisentan, which is used to treat pulmonary arterial hypertension (PAH). His medications were adjusted with the goal of the therapy being reduction of Marcum's PAH symptoms.[64]

Notes from a on December 12, 2023 Health Services follow up visit describe Marcum as a "patient with complicated cardiac history of chronic heart failure and pulmonary hypertension with severely dilated right heart chambers, and small left heart, with multiple hospital admissions this year."[65]

On December 14, 2023 Marcum reported to Health Services after experiencing several hours of chest pain with pressure across the superior aspect of his chest. He stated nothing made it better or worse.[66]

On December 26, 2023 Marcum reported to Health Services for chest pain he had experienced for about three days and his weight was up about 10 pounds from normal.[67]

On January 3, 2024 Marcum was seen at Health Services with continued shortness of breath and fluid retention. His weight still had not returned to his baseline.[68]

On January 9, 2024 Marcum reported to Health Services complaining of chest pain for the past two days and tingling down his left arm.[69]

On January 19, 2024 Marcum took his last dose of Mavryet for treatment of his hepatitis C.[70]

On January 28, 2024 Marcum was again transported to the Wilamette Valley Medical Center emergency room via ambulance after experiencing chest pain. The on-call MD ordered Marcum transported due to his extensive history of cardiac issues and current symptoms.[71]

---

[64] *See* Exhibit 28, Michael Marcum BOP Health Services medical records, December 8, 2023 Encounter Date.
[65] *See* Exhibit 29, Michael Marcum BOP Health Services medical records, December 12, 2023 Encounter Date.
[66] *See* Exhibit 30, Michael Marcum BOP Health Services medical records, December 14, 2023 Encounter Date.
[67] *See* Exhibit 31, Michael Marcum BOP Health Services medical records, December 26, 2023 Encounter Date.
[68] *See* Exhibit 32, Michael Marcum BOP Health Services medical records, January 3, 2024 Encounter Date.
[69] *See* Exhibit 33, Michael Marcum BOP Health Services medical records, January 9, 2024 Encounter Date.
[70] *See* Exhibit 34, Michael Marcum BOP Health Services medical records, January 19, 2024 Encounter Date.
[71] *See* Exhibit 35, Michael Marcum BOP Health Services medical records, January 28, 2024 Note Date.

On February 12, 2024, Marcum was seen at Health Services. He presented with increased shortness of breath and sleeping that was particularly uncomfortable. He had also gained 11 pounds in the prior month.[72]

### 1. Mr. Marcum's Repeated Hospitalizations Establish that the Medical Facilities at FCI Sheridan Are Not Adequate to Treat His Life Threatening Physical and Medical Conditions

During the six-month period between July 16, 2023 and January 28, 2024 Michael Marcum was transported to local hospital emergency rooms on six occasions for evaluation and treatment of heart failure symptoms he was experiencing. These hospital visits occurred on July 16, 2023, August 28, 2023, September 3, 2023, September 18, 2023, November 27, 2023 and January 28, 2023. On two of these Marcum was admitted to the Salem Hospital for multiple days of treatment.

It is commendable that FCI Sheridan Health Services is aware of Mr. Marcum's serious health issues and has repeatedly transported him to local hospital emergency rooms for assessment and treatment of his heart failure symptoms. But it is also an implicit acknowledgement that Health Services is not equipped to treat to Mr. Marcum's sever heart failure. This is particularly true given Dr. Spear's belief they "do not have great meds to treat [Marcum's] pulmonary hypertension on the formulary." And his repeated requests that Mr. Marcum be considered for compassionate release given his overall poor health. A review of Mr. Marcum's FCI Sheridan medical records gives no indication that BOP has considered these requests.

### 2. The BOP's Lack of Response to Compassionate Release Requests Does Not Indicate Mr. Marcum's Sentencing Reduction Request Lacks Merit

The lack of a BOP response to Mr. Marcum's compassionate release request does not indicate a lack of merit. Prior to the First Step Act, the U.S. Department of Justice found the BOP's management of compassionate release prevented many inmates "who may be eligible candidates for release" from even being considered, and left some inmates "dying before their

---

[72] See Exhibit 36, Michael Marcum BOP Health Services medical records, February 12, 2024 Encounter Date.

requests were decided."[73] Even after the First Step Act and during the pandemic the BOP was slow to consider compassionate release motions and granted only 41, or 1% of the total during the pandemic.[74] More recently, on September 13, 2023, BOP Director Colette S. Peters testified that since the FSA went into effect on December 21, 2018, only 129 of the 4,606 individuals released through a compassionate release were released on motions initiated by the BOP, including only 9 of the 216 individuals released in 2023.[75] The remaining 4,477 received compassionate release after defense motions.

Mr. Marcum's congestive heart failure and pulmonary hypertension are permanent and life threatening. They require long-term, specialized medical care that is not being provided at FCI Sheridan. This places him at risk of serious deterioration in health or death and his request for compassionate release should be granted.

### F. Mr. Marcum Faces Physical and Medical Conditions that Substantially Diminish his Ability to Self-Care Within the Environment of a Prison

While incarcerated the only treatment option for Michael Marcum to address his life threatening physical and medical conditions is reporting to FCI Sheridan Health Services, which is not equipped to treat his conditions. If Health Services deems it appropriate Marcum is transported to local hospitals, but he has no control over that decision. Further, Mr. Marcum has no say in deciding which cardiologist to see, and his medication options are limited to those on the BOP formulary, which are not believe to be optimal. If granted release, Mr. Marcum's treatment options will be substantially enhanced as he will be able to decide which cardiologist to see and take the medications preferred by his provider. He will also be able to control his diet, exercise and other living conditions.

District Courts have granted many motions to reduce sentences based at least partially on the medical circumstances of the defendant. *See e.g. United States v. Jim Farley,* No. 17-CR-

---

[73] U.S. Dep't of Justice Office of the Inspector General, The Federal Bureau of Prisons' Compassionate Release Program at p. i (Apr. 2013), *available at* https://oig.justice.gov/reports/2013/e1306.pdf
[74] U.S. Sentencing Commission Compassionate Release Data Report for Fiscal Years 2020 to 2022 at p. 11 (Sept. 2022), a*vailable at* https://www.ussc.gov/sites/default/files/pdf/research-andpublications/federal-sentencing-statistics/compassionaterelease/20220908-Compassionate-Release.pdf.
[75] 35 *See* Statement of Colette S. Peters, Director, Federal Bureau of Prisons, Before the Committee on the Judiciary, United States Senate, For a Hearing on "Oversight of the Federal Bureau of Prisons, presented on September 13, 2023, *available at* https://www.judiciary.senate.gov/imo/media/doc/2023-09-13-testimony-peters.pdf.

3511-H, ECF No. 57 (S.D. Cal. Nov. 27, 2023) (reducing defendant's sentence from 120 to 64 months due to his serious medical condition, surgery, and lack of follow-up medical treatment for a carcinoid tumor); *United States v. Veronica Torres,* No. 21-CR-0191-JLS, ECF No. 119 (S.D. Cal. Oct. 23, 2023) (reducing defendant's sentence from 24 to 18 months based on her serious medical and physical condition, including neurofibromatosis—a rare genetic disorder that causes tumors to grown in and around the nervous system—which resulted in a below-the-knee leg amputation); *United States v. Alexandra Melina-Ramirez,* No. 22-CR-1396-CAB, ECF No. 42 (S.D. Cal. June 2, 2023) (reducing 21-year-old defendant's sentence from 18 to five months because she was 36 weeks pregnant and suffered from a serious heart condition, but had not received adequate prenatal or medical treatment, or been transferred to the Federal Bureau of Prisons' Mothers and Infants Together (MINT) or Residential Parenting Program (RPP) prior to hers imminent delivery date).

Here, release is appropriate to facilitate Mr. Marcum's ability to pursue his preferred treatments for the life threatening physical ailments that confront him.

### G. The Twenty-Plus Months Mr. Marcum has Served is Sufficient, but not Greater than Necessary, to Provide Just Punishment Under § 3553(a)

Before granting compassionate release courts must "consider[] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Ultimately, the § 3553(a) factors instruct courts to impose a sentence that is "sufficient but not greater than necessary" to achieve the purposes of punishment. 18 U.S.C. § 3553(a). In this specific circumstance, requiring Mr. Marcum "to serve out the rest of [his]. . . sentence would be 'greater than necessary to serve the purposes' of 18 U.S.C. § 3553(a)(2)." *Wong Chi Fai*, 2019 WL 3428504, at *4; *accord United States v. McGraw*, No. 202CR00018LJMCMM, 2019 WL 2059488, at *5 (S.D. Ind. May 9, 2019).

First, while not intentional, the multitude of physical ailments afflicting Mr. Marcum have made his time in custody exceptionally punitive. He has served more than twenty months in federal custody suffering from chronic chest pain, shortness of breath, dizziness and fatigue – all while worrying about the level of care he is receiving for his life threatening conditions. He has

therefore "served much of his sentence while seriously ill and in physical discomfort." *United States v. McGraw,* No.202CR00018LJMCMM, 2019 WL 2059488, at *5 (S.D. Ind. May 9, 2019). Even if his "medical care in prison [is] acceptable, [Mr. Marcum's] health conditions are painful and difficult, and [he] has suffered them in the context of communal living and lack of comfortable surroundings that come with being in prison." *United States v. Bradshaw,* No. 1:15-CR-422, 2019 WL 7605447, at *3 (M.D.N.C. Sept. 12, 2019). "This means that [his] sentence has been significantly more laborious and difficult than that served by most inmates. It also means that further incarceration in [his] condition would be greater than necessary to serve the purposes of punishment set forth in § 3553(a)(2)." *United States v. Gray*, 416 F. Supp. 3d 784, 790 (S.D. Ind. 2019).

Second, Mr. Marcum is unlikely to pose a danger to the community. He realizes that he suffers from severe heart failure and knows that reverting to his prior use of methamphetamine will quickly result in death. His twenty months of sobriety have opened his eyes to the negative consequences his lifestyle was having on his relationship with his daughters and hopes to ameliorate the damage he has done. Mr. Marcum does not qualify for RDAP, but he is currently participating in the BOP non-residential treatment program and will continue participating in future substance abuse treatment.

Judges have concluded that granting compassionate release to a person with diminished physical capabilities, like Mr. Marcum, is consistent with public safety. *See, e.g.*, *United States v. Perez Alvarado*, No. 16-CR-00940-BAS, 2020 WL 5203386, at *3 (S.D. Cal. Sept. 1, 2020) (Bashant, J.) ("The likelihood of Mr. Perez Alvarado posing a significant danger to the community is also greatly reduced because of his medical condition."). Mr. Marcum will also continue to serve the three years of supervised release imposed by this Court. Another extraordinarily powerful deterrent to the commission of any future crimes by Mr. Marcum is his knowledge that if he "commit[s] an offense again in the future, [he] knows that [he] is likely to die in prison." *Perez Alvarado*, 2020 WL 5203386, at *3.

Mr. Marcum has also demonstrated rehabilitation while in custody. He has been unable to work due to his medical condition and he is does not qualify for RDAP. But Mr. Marcum has

completed a Spanish class, he is currently participating in the BOP Non-Residential Drug Treatment program, he has committed no disciplinary infractions,[76] and he has paid all financial obligations in full.[77]

Third, Mr. Marcum has spent a not-insubstantial amount of time in custody already. As of the filing of this motion he will have served more than twenty months in federal custody. As such, he has served about 58% of his effective sentence.[78] Further, even without compassionate release, BOP calculates a home detention eligibility date of January 7, 2025.[79]

Courts have granted compassionate release to defendants who have served less time in custody than Mr. Marcum. *See United States v. Karr,* No. 6:17-CR-25-REW, 2020 WL 774363, at *9 (E.D. Ky. Feb. 18, 2020) (over 25%). And courts have concluded that in the extreme circumstances presented by debilitating illness, serious prior conduct does not foreclose compassionate release. Courts have granted motions even where the individuals' history is more troubling than Mr. Marcum's. In *Perez-Alvarado*, the Court granted compassionate release to a "career offender" with a "lengthy and serious criminal record," including "at least one serious violent offense." 2020 WL 5203386, at *3. In *Livingston*, the defendant was serving a sentence for "violent armed robberies," and he had a criminal record of "escalating seriousness" that began in his teens. 2021 WL 5579680, at *3. The defendant in *Karr* was convicted of a drug trafficking offense with aggravated facts and he had committed prior offenses. *Karr*, 2020 WL 774363, at *7. And the defendant in *Ramirez* led a "violent narcotics trafficking organization," fell into the highest criminal history category, and had a lengthy (if dated) disciplinary record in custody. *United States v. Ramirez*, No. 98CR438PGGSDA, 2021 WL 4150891, at *6-7 (S.D.N.Y. Sept. 13, 2021).

Granting compassionate release in these cases, judges did not deny or minimize the seriousness of the movants' conduct. Rather, they concluded that release was warranted—in spite of that conduct—because of the movants' debilitating illnesses. Such is the case here. Mr.

---

[76] Ex. 7 at 1of 3.
[77] *Id*. at 3 of 6.
[78] Mr. Marcum was sentenced to a 41-month term but is expected to serve about 35 months in actual custody. He was arrested on June 13, 2022 and his projected release date is May 10, 2025.
[79] Ex. 7 at 2of3.

1   Marcum's current offenses are possession of a counterfeit postal key and being a felon in

2   possession of ammunition. In essence, Mr. Marcum was stealing mail to support his

3   methamphetamine addiction and a firearm and ammunition were discovered in his bedroom after

4   he was arrested. He possessed the firearm for protection and it stayed at the house. [80] Mr.

5   Marcum's prior record is extensive but exists primarily of substance abuse and theft related

6   offenses that are common for addicts.[81]

7          Further, one of the § 3553(a) sentencing factors is the need for the sentence imposed "to

8   provide the defendant with needed…medical care, or other correctional treatment in the most

9   effective manner." 18 U.S.C. § 3553 (a)(2)(D). As discussed above, FCI Sheridan is not capable

10  of providing medical care in the most effective manner. Overall, the § 3553(a) factors strongly

11  favor release.

12         **H.  Release Plan**

13         Upon his release from custody, Mr. Marcum will reside with and be cared for by his

14  mother, Pamela Tidwell, and his stepfather Jerry Tidwell at their residence located in Bodfish,

15  California. They are fully aware of Mr. Marcum's medical condition and will accompany him to

16  his to his medical appointments as appropriate. Mr. Marcum also plans to apply for Medi-Cal

17  and Medicare so he can immediately obtain medical treatment for his conditions. When his

18  health improves sufficiently to permit full time employment he hopes to obtain private medical

19  insurance through a future employer. Mr. Marcum is also confident he will maintain his sobriety

20  and he will continue pursuing substance abuse treatment while on supervised release.

21                                      **CONCLUSION**

22         Based on the foregoing, Michael Marcum respectfully requests that this Court grant his

23  motion for a reduced sentence under 18 U.S.C. § 3582(c).

24

25

26

27

28

---

[80] PSR at ¶¶ 5-13.
[81] PSR at ¶¶ 46-57.

1

2

3

4        Dated: February 23, 2024

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

/s/ Eric V. Kersten
ERIC V. KERSTEN
Assistant Federal Defender

Attorneys for Defendant
MICHAEL MARCUM

19